# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

## THIRD DISTRICT—MAY TERM, 1899.

### Chicago & Alton R. R. Co. v. Herman J. Myers.

1. PHOTOGRAPHS—*Generally Admissible in Personal Injury Cases.*—As a general rule, in personal injury suits, photographs are admissible as evidence.

2. INSTRUCTIONS—*Usurping the Province of the Jury.*—An instruction which takes from the jury the question whether, independently of any contract or rule, the plaintiff was bound to use ordinary care, is erroneous, as abrogating the common law obligation requiring the party to use proper caution.

3. WORDS AND PHRASES—" *Acquiesce* " *Defined.*—Ordinarily the term " acquiesce " implies knowledge, and means a quiet submission or compliance to a state of facts governed by the knowledge, so that to acquiesce means to know and acquiesce.

**Action in Case,** for personal injuries. Appeal from the Circuit Court of McLean County; the Hon. JOHN H. MOFFETT, Judge, presiding. Heard in this court at the May term, 1899. Reversed and remanded. Opinion filed December 13, 1899.

WILLIAM BROWN, General Solicitor, and A. E. DEMANGE, attorneys for appellant.

WELTY & STERLING, LOUIS FITZ HENRY and HART & HOFFMAN, attorneys for appellee.

PER CURIAM.

In this action appellee sued appellant for damages on account of personal injuries received by him while act-

ing as a brakeman for appellant and while in the exercise of ordinary care for his own safety, as the result of negligence of appellant in maintaining an improper roadbed at the point where he was injured and in permitting the brakebeam of the car which hurt him to become loose. The declaration consists of eight counts. A trial by jury resulted in a verdict and judgment against appellant for $15,000, and from such judgment this appeal is taken and various errors are urged to effect reversal of the judgment.

The evidence discloses that appellee was employed as a brakeman and on the night of November 25, 1897, which was rainy, dark and bad, in discharge of the duties of his employment, arrived at Joliet, Illinois, on one of the freight trains of appellant. In the yards there, some switching was to be done to leave certain cars of the train on a side track. Having prepared the switch for the purpose, appellee signaled the engineer to proceed to "kick back" in order to place one of the cars on the track desired. At the same time he approached the car to be thus separated and while the train was in motion to carry out the then object, appellee went in between the cars, stepping his right foot between the rails, and attempted to pull out the pin. This he could not do at first on account of some friction on the pin; whereupon he stepped with both feet between the rails and, walking along between the cars with the train, succeeded in pulling out the pin. Just at this moment he, in some manner, was thrown to the ground with his legs over the rail where they were caught and run over by a wheel, appellee thus losing both feet. The evidence is conflicting as to whether appellee stepped into a drainage ditch running across the track between two ties at or near the place of the accident and was tripped and fell, or whether he was tripped by the striking of a brakebeam upon his leg. The evidence also shows that at the time of his employment appellee signed and was sworn to an application for his position wherein it is stated that to walk between moving cars is against the rules of appellant company, and wherein he agreed not to take any risk in making couplings upon his

own motion or the order or request of any person. It also appears that appellee received a copy of appellant's rule which provided, among other things, that getting between cars in motion to uncouple them is dangerous and in violation of duty; and that every employe is required to use caution to avoid injury to himself, etc. Evidence was also taken, conflicting however, upon the question whether open and continued violation of the rule mentioned, by employes, had not created a waiver of it by appellant.

It is first contended by counsel for appellant that the court permitted evidence to be taken of the condition of the road-bed and track at points remote from the place of the injury. Ordinarily, where such a place is sharply defined, that objection might prevail. But upon an examination of the entire testimony the exact spot of the accident seems to be doubtful; and it is not clear which one of several, in a space of some length along the road-bed, is the right place. In that condition of the record it can not be said the court erred in permitting evidence to go in of the various places referred to. In that connection also it is urged as error that the court permitted two photographs of a part of the premises to be introduced in evidence. As a general rule in matters of this nature such photographs are admissible, and no reason is seen why an exception should be made in this case.

It is next urged that the court erred in permitting leading questions to be asked of appellee and other witnesses concerning the custom or habit of brakemen going between moving cars to uncouple them, the proof of which habit or custom is relied upon by appellee to constitute a waiver of appellant's rule on that score. Though vested to a large extent in the discretion of the trial court, still parties have a right to insist upon a proper examination of witnesses, especially those interested, on material points. Upon investigating the record concerning this objection of appellant, the court discovers that very large latitude in leading the witnesses upon this subject was given over the objections of appellant; and that in the cross-examination of Brinsley,

the engineer, and Moore, the conductor, appellee was per-
mitted to elicit statements upon such a practice of brake-
men.   The direct examination of these two witnesses was
of matters purely *res gestae*, and the court is very sure the
statements asked for were not proper on cross-examination.
Upon the whole the court deems these errors prejudicial to
appellant.

The next assignment of error brings into consideration
an instruction given by the court at the request of appellee.
The force of the instruction is that it was the duty of
appellant to have its tracks ballasted to the level of the
top of the ties, if such ballasting was necessary to make
the tracks reasonably safe in coupling or uncoupling cars;
and if the tracks were not so ballasted as to be reason-
ably safe and appellee was thereby injured, he should
recover.   It is insisted that the instruction is the law in
this case upon the authority of L. E. & W. R. R. Co. v.
Morrissey, 177 Ill. 376.   By referring to that case it will
be early seen that it is not in point here and readily dis-
tinguished.   There the issue was very clearly throughout
the trial whether the railroad was in fact properly ballasted;
and the instruction in discussion now was there properly
given.   Here one of the issues was, not whether the road-
bed was properly ballasted, but whether a ditch existed, in
the ballasting, by which appellee was injured.   Thus it will
be seen the object was not to determine generally whether
the ballasting made the road-bed reasonably safe, but to
determine the effect of the ditch, which was not submitted
to the jury by the instruction.   Having failed in that essen-
tial particular the instruction was of necessity misleading;
and the defect is considered prejudicial.

Another instruction complained of is as follows:

" The court instructs the jury that even though you may
believe from the evidence that the defendant company had
published a rule forbidding brakemen upon its line of rail-
road going between moving cars to uncouple the same, and
making it a violation of the duty on the part of the brake-
man to go between moving cars to uncouple the same, yet
if you further believe from the evidence that it was the

habitual practice of railroad brakemen on defendant's road to disregard said rule and to go between moving cars to uncouple the same under the conditions and circumstances shown by the evidence in this case with the experience plaintiff had, and that such habitual practice on the part of the brakemen had been continued for such length of time prior to the injury, that defendant company knew such was the habitual practice upon its line of road and defendant acquiesced in such habitual violation of this rule on the part of its brakemen, then under such facts, if you so find from the evidence, the rule so published would not in law be held operative and in force at the time of the injury."

It will be remembered that a part of this rule referred to the duty of employes to use caution to avoid injury to themselves. However accurate the statement in the instruction is as an abstract proposition of law, its use as here given in this case is certainly misleading and erroneous; for it effectually takes from the jury the question whether, independently of any contract or rule, appellee was bound to use ordinary care. Embodied in this contract or rule is the familiar law of the land that he should use ordinary care, for that is what that part of the rule means if it means anything.

Regardless of the rule or contract he is bound to do that. Yet without reference to this common law obligation of appellee the jury are told that the rule would not, in law, be held operative and in force on the grounds stated. Furthermore the effect of the instruction is to remove from the consideration of the jury the question whether going between moving cars to uncouple the same was negligence on the part of appellee sufficient to defeat his action. Independently of the requirement of the rule, the law required him to use proper caution; and under the law it was for the jury to say whether such act of going between the cars was contributory negligence. While it might be the appellant could waive the rule it promulgated as such, it would be unreasonable and against public policy to hold that the law itself was thereby abrogated. Had the instruction been so modified it doubtless would be sustained;

without it the court is compelled to say the instruction is erroneous.

Again it is urged the court erred in modifying the statement of the instruction that before the violations of appellant's rule should constitute a waiver of it by appellant, it must appear that appellant had knowledge of the opposing practice and acquiesced in it as such, by using the disjunctive "or" instead of the connective "and" between the ideas of knowledge and acquiescence.

Ordinarily the term "acquiesce" implies knowledge, and means a quiet submission or compliance to a state of facts governed by that knowledge; so that to acquiesce means to know and acquiesce.

The instruction as given informed the jury that if appellant had knowledge of the common practice of employes contrary to the rule, such rule should be taken as waived; or if appellant acquiesced in the practice, the rule would be likewise waived. The test is, all that is meant by acquiescence, either actual or implied—mere knowledge—would not constitute a waiver. So to use the idea of knowledge in that regard without extending it to the meaning of acquiescence, and so connecting it, would be inaccurate and misleading. For that reason the instruction is bad. One instruction given at the instance of appellee contains the correct statement of this rule; two offered by appellant on the subject have been modified as stated. The court is not inclined to hold the error in these two instances, in this case, corrected in that manner.

For the errors indicated the judgment of the Circuit Court will be reversed and the cause remanded.